IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

**UNITED STATES OF AMERICA,**

v.  CRIMINAL ACTION NO. 4:10cr88

**ARLINGTON ASHLEY,**

**Defendant.**

*MEMORANDUM OPINION AND ORDER*

This matter comes before the Court on Defendant Arlington Ashley's ("Defendant") Motion to Suppress all evidence obtained as a result of Defendant's warrantless arrest, as well as any statements made by Defendant after he invoked his right to counsel, and Defendant's supplemental Motion to Suppress any evidence seized from 934 Chumley Road, Apartment B, Portsmouth, Virginia. Having thoroughly reviewed the Parties' pleadings, and after conducting a hearing on May 17, 2011, this matter is now ripe for judicial determination. For the reasons set forth below, Defendant's Motion to Suppress his arrest is **DENIED** and Defendant's Motion to Suppress the search of 934 Chumley Road, Apartment B is **GRANTED**.

### I. FACTUAL AND PROCEDURAL HISTORY

The Government and Defendant dispute the material substantive facts relevant to this Motion. However, the facts pertinent to this Motion surround the detention and arrest of Defendant during the lawful execution of a search warrant at 140 Annette Court, Apartment 14, Newport News, Virginia, the residence of Defendant's girlfriend, Tara S. Upshaw, and the

1

allegedly unlawful execution of a search warrant at 934 Chumley Road, Apartment B, Portsmouth, Virginia, on June 16, 2010.

*Defendant's Warrantless Arrest*

On June 12 2010, Customs and Border Protection Officers at the Foreign Mail Facility in Miami, Florida discovered a quantity of cocaine in a shipment from Eucebia Stewart in Colon Panama. The package containing the cocaine was addressed to Tara S. Upshaw ("Ms. Upshaw") at 140 Annette Court, Apartment 14, Newport News, Virginia 23601. On June 16, 2010, a Postal Inspector, acting in an undercover capacity, delivered the package to Ms. Upshaw at 140 Annette Court, Apartment 14, and Ms. Upshaw signed for the package upon delivery. After delivery of the package, federal agents observed Defendant arrive in a red Nissan and enter the apartment. Shortly thereafter, Ms. Upshaw's son, Tashon Upshaw entered the apartment as well.

Soon thereafter, a federal search warrant was executed at 140 Annette Court, Apartment 14. Defendant, Ms. Upshaw, and her son were present during the execution of the search warrant. During the hearing on this matter, Special Agent John T. Slayton of the Bureau of Immigration and Customs Enforcement and Special Agent Pete Gallaccio of the Virginia State Police both testified that they entered the apartment shortly after entry was cleared by the state SWAT team. Upon entering the apartment, the agents observed Ms. Upshaw, her son, Tashon, and Defendant lying face-down in the hallway. Defendant was handcuffed but not under arrest. At this time, the agents proceeded into the master bedroom of the apartment where they had learned the package to be located. After inspecting the package, which had not been opened, Agent Slayton had Ms. Upshaw escorted into the bedroom for questioning. When Ms. Upshaw arrived in the bedroom, she was advised of her Miranda rights, but was not placed under arrest.

Ms. Upshaw told the agents that Defendant had contacted her while out of town and indicated that he would be sending a package to her address. Defendant told Ms. Upshaw that the package would be addressed to her because he was not sure whether he would be there to accept the package. Ms. Upshaw also indicated that when she received the package, she called Defendant to let him know that it had arrived. Ms. Upshaw denied having any knowledge of the contents of the package. Ms. Upshaw also indicated that Defendant did not live at 140 Annette Court, Apartment 14, but rather that he lived somewhere in Portsmouth, Virginia, though she did not know exactly where. After the agents interviewed Ms. Upshaw, she was escorted out of the bedroom and her son, Tashon, was brought into the bedroom. The agents advised Tashon of his Miranda rights and proceeded to question him regarding the package. Tashon denied any knowledge of the package or its contents. Following this interview, Tashon was escorted out of the bedroom.

At some point during Agents Slayton and Gallaccio's interview of Ms. Upshaw and Tashon, Special Agent Brian Lewis of the Bureau of Immigration and Customs Enforcement questioned Defendant about his immigration status. Defendant told Agent Lewis that he was a United States citizen. Agent Lewis obtained Defendant's date of birth and social security number from another officer at the scene and used the information to conduct a telephonic check on Defendant's immigration status and recent international travels. The check revealed that Defendant had recently reentered the United States from Panama on June 1, 2010. Agent Lewis also determined that Defendant was not a United States citizen, but rather was a lawful permanent resident. Agent Lewis determined that Defendant was in violation of his immigration status based upon Defendant's prior criminal convictions for a firearms and a narcotics violation,

which made him amenable to deportation.

After Agents Slayton and Gallaccio separately interviewed Ms. Upshaw and her son, Defendant was escorted, in handcuffs, into the master bedroom. When he entered the bedroom, Agent Gallaccio advised Defendant of his Miranda rights. The agents asked Defendant about the package and Defendant denied any knowledge of the package or its contents. According to Agent Slayton's testimony, Defendant also indicated that he lived at 408 Westview Drive, Hampton, Virginia. Defendant then requested to speak with Ms. Upshaw before providing the agents with any other information. Ms. Upshaw was escorted back into the bedroom with Defendant and the agents. Defendant told her several times that he did not know anything about the package and Ms. Upshaw was then escorted out of the bedroom. After Ms. Upshaw left the room, Defendant became uncooperative in answering the agents' questions. He was subsequently escorted out of the room and placed under arrest. During the hearing, there was some discrepancy as to the grounds for Defendant's arrest after he was interviewed by the agents regarding the package. Agent Slayton testified that Defendant was arrested based upon his narcotics involvement, which was predicated upon the package and its contents, while Agent Lewis testified that he informed Agent Slayton of Defendant's immigration violations and that Defendant was arrested because he was in violation of his immigration status. Agent Gallaccio also testified that it was his belief that Defendant was placed under arrest for an immigration violation.

### *Search of 934 Chumley Road, Apartment B*

At some point during the search of 140 Annette Court, Apartment 14, and the questioning of Ms. Upshaw, her son, and Defendant, agents at the scene outside of 140 Annette Court

screened the red Nissan that Defendant had arrived in with a K-9 unit. The K-9 unit alerted positive on the vehicle and the agents, including Agent Gallaccio, proceeded to conduct a warrantless search of the vehicle. Agent Slayton testified that during the search, the agents discovered documentation which indicated that Defendant was currently residing at 934 Chumley Road, Apartment B, Portsmouth, Virginia. However, Agent Slayton could not recall what type of document contained this information and Agent Gallaccio testified that the document was a bill, but could not recall what type of bill. When questioned further on this subject by the Court, Agent Gallaccio testified that he believed that the bill was a Dominion Power Bill; however, Agent Gallaccio was subsequently impeached by a Dominion Power Bill which was addressed to Tashon Upshaw at 934 Chumley Road, Apartment B, and not to Defendant, and conceded that the document was not, in fact, a Dominion Power Bill. No narcotics or other evidence were discovered in the vehicle and the document that alerted the agents was not retained as evidence. Agent Slayton also testified that other than the unidentified document, the agents had no other information linking Defendant to 934 Chumley Road, Apartment B.

Based upon the unidentified document found in the red Nissan, Agent Gallaccio obtained and executed a search warrant on 934 Chumley Road, Apartment B on June 16, 2010. Agent Gallaccio's affidavit, which was used to secure the search warrant, indicated that probable cause for the search was based on "[d]ocuments recovered during the arrest [of Defendant], and suspect statements, indicat[ing] that Arlington Ashley lives at 934 Chumley Rd. Apt. B in the City of Portsmouth." During the search of 934 Chumley Road, Apartment B, agents recovered a shipping receipt from Panama containing shipping information which matched the package seized from 140 Annette Court, Apartment 14, a Smith and Wesson firearm and ammunition,

digital scales, and other paraphernalia.

On July 13, 2010, Defendant was charged in an two-count Criminal Indictment in the Eastern District of Virginia, Newport News Division. The indictment charged Defendant with Possess with Intent to Distribute Cocaine, in violation of 21 U.S.C. § 841(a)(1), and Import Cocaine in violation of 21 U.S.C. § 952. On April 1, 2011, Defendant filed a Motion to Suppress all evidence obtained as a result of Defendant's warrantless arrest, as well as any statements made by Defendant after he invoked his right to counsel. On April 7, 2011, the Government filed a Response in Opposition to Defendant's Motion. On May 9, 2011, a four-count Superseding Indictment was filed, charging Defendant with Possess with Intent to Distribute Cocaine, in violation of 21 U.S.C. § 841(a)(1), Import Cocaine, in violation of 21 U.S.C. § 952, Felon in Possession of Firearm, in violation of 18 U.S.C. § 922(g)(1), and Escape, in violation of 18 U.S.C. § 751(a). The Court held a hearing on Defendant's pending Motion to Suppress on May 17, 2011. At the hearing, Defense counsel indicated that, in light of the Superseding Indictment, he planned to file an additional Motion to Suppress any evidence seized from 934 Chumley Road, Apartment B, Portsmouth, Virginia. The Court heard evidence pertaining to both Motions to Suppress and granted Defendant leave to file a supplemental Motion to Suppress based upon the search at 934 Chumley Road, Apartment B. Defendant filed a Supplemental Motion to Suppress on June 1, 2011. The Government filed a Response to Defendant's Supplemental Motion on June 6, 2011. Accordingly, these matters are now ripe for judicial determination.

## II. LEGAL STANDARD

The Fourth Amendment protects criminal defendants against "unreasonable searches and seizures." U.S. CONST. amend. IV. This protection requires that an arrest or search be based

upon probable cause and executed pursuant to a valid warrant. *See Katz v. U.S.*, 389 U.S. 347 (1967). Accordingly, arrests and searches must be supported by "probable cause" or "evidence which would 'warrant a man of reasonable caution in the belief' that a felony has been committed." *Wong Sun v. United States*, 371 U.S. 471, 479 (1963). "Generally, evidence seized in violation of the Fourth Amendment is subject to suppression under the exclusionary rule." *United States v. Andrews*, 577 F.3d 231, 235 (4th Cir. 2009). Although the Fourth Amendment contains no provision expressly requiring suppression of evidence obtained in violation of the Fourth Amendment's "probable cause" requirement, the "exclusionary rule" works as "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect." *United States v. Leon*, 468 U.S. 897, 906 (1984)(quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)).

Motions to suppress evidence obtained pursuant to an unlawful search or seizure fall into the class of issues that are decided by the court and not the jury. As a general rule, the burden of proof is on the defendant who seeks to suppress the evidence. *See United States v. Dickerson*, 655 F.2d 559 (4th Cir. 1981); *Grainger v. United States*, 158 F.2d 236 (4th Cir. 1946). Once the defendant establishes a basis for his suppression motion, the burden shifts to the government. *See United States v. Matlock*, 415 U.S. 164, 177-78 n.14 (1974). In the course of deciding a motion to suppress, the district court may make findings of fact, as well as rulings of law. *United States v. Stevenson*, 396 F.3d 538, 541 (4th Cir. 2005) (citations omitted). "At a hearing on a motion to suppress, the credibility of the witness and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence, are all matters to be determined by the trial judge." *United States v. McKneely*, 6 F.3d 1447, 1452-53

(10th Cir. 1993); *see United States v. Massey*, 257 F. Appx. 662, 664 (4th Cir. 2007); *Columbus-Am. Discovery Group v. Atl. Mut. Ins. Co.*, 56 F.3d 556 (4th Cir. 1995) ("In the usual case, the fact finder is in a better position to make judgments about the reliability of some forms of evidence than a reviewing body acting solely on the basis of a written record of that evidence. Evaluation of the credibility of a live witness is the most obvious example.").

## II. DISCUSSION

### A. Defendant's Warrantless Arrest

Defendant argues that his warrantless arrest following the lawful search of 140 Annette Court, Apartment 14 violated his rights under the Fourth Amendment because the facts available to the arresting officers at the time of the search do not establish probable cause for arrest. Although "law enforcement officers may find it wise to seek arrest warrants where practicable to do so," officers may constitutionally conduct warrantless public arrests based upon probable cause regardless as to whether an arrest warrant could have been obtained. *United States v. Watson*, 423 U.S. 411, 423-24 (1976); *United States v. Dickey-Bey*, 393 F.3d 449, 453 (4th Cir. 2004) ("It is well-settled under Fourth Amendment jurisprudence that a police officer may lawfully arrest an individual in a public place without a warrant if the officer has probable cause to believe that the individual has committed, is committing, or is about to commit a crime."). "Probable cause is judged by an analysis of the totality of the circumstances, which are weighed 'not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." *Id.* (internal citations omitted) (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)). Viewing the totality of the circumstances, the Court finds that probable cause supported Defendant's warrantless arrest.

Defendant is correct that the evidence at the hearing presenting indicated that prior to arresting Defendant, the officers knew that Defendant was present in an apartment where a package containing cocaine had been recently delivered. While mere presence "'at the scene of a crime, or in the company of a person engaging in criminal activity' is not, by itself, sufficient to establish probable cause," "[s]eemingly innocent activity . . . 'may provide the basis for a showing of probable cause' when considered in the context of all the surrounding circumstances." *Taylor v. Waters*, 81 F.3d 429, 434 (4th Cir. 1996). Defendant's presence at 140 Annette Court, Apartment 14, where the package was received, was coupled with Ms. Upshaw's statements that Defendant had contacted her while out of town and indicated that he would be sending a package to her address and with the results of the telephonic check which revealed that Defendant had recently reentered the United States from Panama on June 1, 2010, which happened to be the country of origin for the package. These facts, in conjunction with Defendant's presence at the scene gave rise to probable cause to arrest Defendant for the narcotics violations. Accordingly, Defendant's Motion to Suppress his warrantless arrest and all evidence obtained therefrom is **DENIED**.

B.  Search of 934 Chumley Road, Apartment B

Defendant next seeks to suppress the search of 934 Chumley Road, Apartment B and all evidence seized therefrom. Defendant advances two primary arguments in support of his Motion. First, Defendant contends that the officers violated his Fourth Amendment Rights when they conducted a warrantless search of the red Nissan vehicle. Defendant argues that, in searching the vehicle for drugs and drug-related contraband, the officers had no authority to search through papers and documents that were unrelated to the drug search. Second, Defendant

argues that the affidavit on which the search warrant for 934 Chumley Road, Apartment B was obtained contained misleading and untrue information.

The Court turns first to whether the officers conducted a lawful warrantless search of the red Nissan. "It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is 'per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'" *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). One well-established exception to the warrant requirement relates to searches of automobiles. "Under this exception, '[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more.' The scope of a search pursuant to this exception is as broad as a magistrate could authorize. Thus, once police have probable cause, they may search 'every part of the vehicle and its contents that may conceal the object of the search.'" *United States v. Kelly*, 592 F.3d 586, 589-90 (4th Cir. 2010) (internal citations omitted). Defendant does not challenge that the officers had probable cause to search the vehicle once the K-9 unit alerted on the vehicle. *See, e.g., United States v. Jeffus*, 22 F.3d 554, 557 (4th Cir. 1994) ("When the dog 'alerted positive' for the presence of drugs, the officer was given probable cause for the search that followed."). However, Defendant challenges the scope of the search of the vehicle, arguing that the search of documents and papers was beyond the scope of the drug investigation.

"[P]robable cause to search one compartment or container within a car does not invariably provide probable cause to search the entire vehicle." *Kelly*, 592 F.3d at 592. "[T]he scope of the search of an automobile is defined by the object of the search and the places in

10

which there is probable cause to believe that it may be found." *United States v. Gastiaburo*, 16 F.3d 582, 586 (4th Cir. 1994). However, it is well-settled that police may conduct warrantless searches of "closed containers" within an automobile so long as they have probable cause to believe the closed container may contain contraband. *See United States v. Carter*, 300 F.3d 415, 422 (4th Cir. 2002). In this case, Defendant essentially argues that the officers should not have looked through the papers in the red Nissan because they could not have contained the illegal contraband that prompted the officers to search the vehicle. However, Defendant has provided no evidence as to where the document was located or whether it was contained in an area of the vehicle that could not have contained the illegal contraband that was the object of the search. Furthermore, Agent Gallaccio testified that he searched through the papers in the vehicle because drugs may have been found inside the envelops containing the papers. Accordingly, the Court finds that Defendant has failed to establish that a search of documents contained within the red Nissan was beyond the scope of the probable cause for the search.

Alternatively, in support of his Motion to Suppress the search of 934 Chumley Road, Apartment B, Defendant also argues that the affidavit provided by Special Agent Gallaccio contained misleading and untrue information on which the magistrate relied in issuing the search warrant. Specifically, Defendant argues that, while the affidavit claimed that probable cause was based upon "[d]ocuments recovered during the arrest, and suspect statements," which indicated that Defendant lived at 934 Chumley Road, Apartment B, in actuality, probable cause was based on one unidentified document and statements by Ms. Upshaw and her son that Defendant resided somewhere in the city of Portsmouth. Where a defendant establishes by a preponderance of the evidence that a false statement knowingly, intentionally, or with reckless disregard for the truth,

was included by the affiant in the warrant affidavit, and that statement was necessary to a finding of probable cause, "the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). The inquiry into whether the officer's affidavit contained materially false or misleading information breaks down into two issues: first, whether Agent Gallaccio deliberately or recklessly included the false or misleading information at issue; and second, whether the exclusion of that information would have defeated probable cause. *See Andrews*, 577 F.3d at 238-39.

Agent Gallaccio's affidavit indicated that probable cause was based on documents recovered during the arrest and suspect statements which indicated that Defendant lived at 934 Chumley Road, Apartment B. However, at the hearing, Agent Gallaccio admitted that there were no suspect statements that indicated that Defendant lived at 934 Chumley Road, but rather that probable cause for the search was based solely on one unidentified document that indicated that Defendant resided at 934 Chumley Road, Apartment B. Accordingly, the Court finds that the affidavit contained false or misleading information in proclaiming that probable cause was based on suspect statements when no such statements existed. Furthermore, given that Agent Gallaccio admitted, under oath, to the misleading character of the information contained in the affidavit, the Court also finds that this information was at least recklessly, if not intentionally, included.

As to the second inquiry under *Franks*, the Court also finds that the misleading information contained in the affidavit was material to the probable cause determination. During the hearing, Officer Gallaccio admitted that he could not identify the document that informed the officers that Defendant lived at 934 Chumley Road, Apartment B. Based on Officer Gallaccio's

own testimony, the officers had no corroborating information to indicate that Defendant resided at that address. The mere presence of some unidentified document with the Chumley Road address on it and Defendant's name, without further corroboration, does not give rise to the inference that the address contained on the document was Defendant's primary residence. Without further information about the type of document obtained or corroboration of the information contained in the document, the Court finds that probable cause was lacking to conduct a search of 934 Chumley Road, Apartment B. Accordingly, the affidavit, without the recklessly included false or misleading information, would not have been sufficient to establish probable cause for the search. Thus, Defendant's Motion to Suppress the search of 934 Chumley Road, Apartment B and all evidence obtained therefrom is **GRANTED**.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Suppress his arrest is **DENIED** and Defendant's Motion to Suppress the search of 934 Chumley Road, Apartment B and all evidence seized therefrom is **GRANTED**. The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel and parties of record.

**IT IS SO ORDERED.**

/s/
_____
Raymond A. Jackson
United States District Judge

Norfolk, Virginia
June 27, 2011