IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division



FILED
MAY 16 2014
CLERK, US DISTRICT COURT
NORFOLK, VA

ARLINGTON ASHLEY,

    Petitioner,

v.                                        CRIMINAL ACTION NO. 4:10cr88

UNITED STATES OF AMERICA,

    Respondent.

*MEMORANDUM ORDER*

This matter is before the Court on Petitioner Arlington Ashley's Motion to Vacate or Set Aside Judgment of Conviction and Sentence Pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion"), ECF No. 132. Petitioner asks the Court to vacate his sentence because his attorneys' performances were so ineffective before trial, throughout trial and during his appeal that he was deprived of his constitutional right to assistance of counsel. For the reasons set forth below, Petitioner's § 2255 Motion is **DENIED**.

I. FACTS AND PROCEDURAL HISTORY

A federal grand jury charged Petitioner in a two-count Indictment with importing and possessing with intent to distribute cocaine. On January 3, 2011, Petitioner filed a letter motion to dismiss counsel, which his attorney Walter B. Dalton followed up with a motion to withdraw. On March 4, 2011, the Court granted the motion to withdraw and appointed Jon M. Babineau as counsel. On May 9, 2011, a federal grand jury returned a Superseding Indictment, adding additional charges. Count One charged Petitioner with Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. § 841(a)(1). Count Two charged Petitioner with Import

1

Cocaine, in violation of 21 U.S.C. § 952. Count Three charged Petitioner with Felon in Possession of Firearm, in violation of 21 U.S.C. § 922(g)(1). Count Four charged Petitioner with Escape, in violation of 21 U.S.C. § 751(a).

On September 8, 2011, a jury found Petitioner guilty on Counts One, Two and Four of the Superseding Indictment. Prior to sentencing, Petitioner filed a motion for *pro se* representation based on ineffective assistance of counsel, which the Court granted and appointed Kevin Diamonstein as standby counsel. On December 20, 2011, Petitioner was sentenced to 252 months imprisonment on Count One to be served concurrently with 252 months imprisonment on Count Two and 60 months imprisonment on Count Four. On January 3, 2012, Mark Diamond was appointed to represent Petitioner on appeal. On July 20, 2012, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") affirmed Petitioner's convictions and sentence by unpublished, per curium opinion. *See United States v. Arlington Ashley*, 490 F. App'x. 512, 2012 WL 2948555 (4th Cir. 2012). The Supreme Court of the United States ("Supreme Court") denied Petitioner's writ of certiorari on October 1, 2012. Petitioner filed the instant motion on October 2, 2013, and on October 15, 2013, the Court Ordered the Government to file a response to the Petitioner's motion within forty-five days. After receiving several extensions, the Government filed its opposition to Petitioner's § 2255 Motion on March 12, 2014.

## II. LEGAL STANDARD

Section 2255 of Title 28 of the United States Code provides in pertinent part:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. In a proceeding to vacate a judgment of conviction, petitioner bears the burden of proving his claim by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958). *See generally Gordon v. Leake*, 574 F.2d 1147, 1151 (4th Cir. 1978), *cert. denied*, 439 U.S. 970 (1978) (providing that a *pro se* petitioner is entitled to have his petition construed liberally and is held to less stringent standards than an attorney drafting such a complaint). When deciding a § 2255 motion, the Court must promptly grant a hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Motions under § 2255 "will not be allowed to do service for an appeal." *Sunal v. Large*, 332 U.S. 174, 178 (1947). Ineffective assistance of counsel claims, however, should generally be raised in a collateral motion instead of on direct appeal. *United States v. Richardson*, 195 F.3d 192, 198 (4th Cir. 1999).

The standard for a claim of ineffectiveness of counsel relies on "whether the counsel's conduct so undermined the proper functioning of the adversarial process that the trial did not result in a just outcome." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prove a claim of ineffective assistance of counsel, a petitioner must meet a two-part test: (1) the petitioner must show counsel's conduct was deficient as a violation of the Sixth Amendment, and (2) the petitioner must prove he was prejudiced as a result of counsel's defective conduct. *Id.* at 687. Attorney performance is held to a standard of reasonable effectiveness under the prevailing norms of the legal community. *Id.* at 688. To demonstrate deficient performance, Petitioner must show "that counsel's representation fell below an objective standard of reasonableness." *Id.* It is presumed that counsel's conduct falls within a wide range of reasonable assistance and Petitioner bears the burden of proving otherwise. *Id.* at 689. The difficulty in overcoming the general presumption that defense counsel provided effective assistance is even greater where counsel's actions required

3

a strategic "assessment and balancing of perceived benefits against perceived risks" — such strategic decisions must be afforded "enormous deference." *United States v. Terry*, 366 F.3d 312, 317 (4th Cir. 2004). To demonstrate prejudice, Petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

### III. DISCUSSION

Petitioner provides a litany of conduct that he maintains is evidence of his attorneys' alleged ineffectiveness. *See* Pet'r's Mot. Vacate at 5-8. On all grounds offered as support for his § 2255 Motion, Petitioner has failed to allege sufficient prejudice arising from supposed deficient representation. Because Petitioner's allegations do not establish ineffective assistance of counsel, his § 2255 Motion is denied.

#### A. Ineffective Assistance of Counsel – Pre-trial Claims

Petitioner asserts that Attorney Dalton and Attorney Babineau were ineffective during the pre-trial phase of the case for their failure to pursue the following issues: 1) standing to contest execution of search warrant; 2) Immigration of Customs Enforcement's ("ICE") use of a tracking device; 3) ICE's improper execution of search warrant; 4) ICE's procurement of a defective search warrant; 5) arrest without probable cause supported by immigration status; 6) arrest without probable cause supported by chain of causation; and 7) use of out-of-court statements in violation of *Miranda*. Petitioner also asserts that counsel was ineffective for failing to call his mother, Tara Upshaw and Tashan Upshaw as witnesses at his probable cause and suppression hearings. As discussed herein, pursuant to the *Strickland* standard for ineffective assistance of counsel, Petitioner has not demonstrated that his attorneys' performances were deficient, nor has he shown

4

any reasonable probability that but for any or all of counsels' alleged ineffective actions, the outcome of the proceedings would have been different.

### i. Failure to Contest Search Warrant for Annette Court Apartment

Petitioner argues that pre-trial counsels' failure to assert standing to contest the search warrant executed on his girlfriend's apartment at 140 Annette Court ("Annette Court Apartment") constituted ineffective assistance. However, Petitioner has not demonstrated that his attorneys' decision not to assert standing was deficient. The Court finds that Attorney Babineau considered the admissibility of evidence acquired from the Annette Court Apartment, and filed a motion to suppress the evidence he believed to have been obtained in violation of Petitioner's constitutional rights. *See* Mot. Suppress Mem., ECF No. 53. Standing to challenge the search warrants at issue in this case was discussed during the suppression hearing, and Attorney Babineau stated that his client only had standing to contest the search warrant for the Chumley Court Apartment. Consequently, Attorney Babineau did not oppose the warrant to search the Annette Court Apartment, but instead objected to Petitioner's arrest at this location. Considering the circumstances and prevailing norms of practice, Petitioner has not shown that failing to assert standing for the Annette Court Apartment search warrant fell below the objective standard of reasonableness, especially in light of the fact that standing may be lacking since the apartment belonged to Petitioner's girlfriend.

Also, Petitioner raises concerns about ICE's execution of the search warrant for the Annette Court Apartment, which counsel did not contest. The first concern Petitioner discusses is ICE's warrantless placement of a break-wire beacon tracking device on the package delivered to the Annette Court Apartment. Petitioner's argument lacks merit. In a similar case where heroin was mailed to Tennessee from Cambodia and intercepted upon arrival in the United States, the

5

Court of Appeals for the District of Columbia Circuit held that no warrant was required for either the installation or use of a mobile tracking device on the package. *United States v. Gbemisola*, 225 F.3d 753 (D.C. Cir. 2000). The court concluded that no warrant was required for the initial opening of the package because the Supreme Court previously held that neither warrant nor probable cause is required for a search of letters sent through international mail. *United States v. Ramsey*, 431 U.S. 606, 619 (1977). Additionally, installing the tracking device did not require any additional intrusion into the defendant's reasonable expectation of privacy beyond opening the package. *Illinois v. Andreas*, 463 U.S. 765, 771 (1983) ("No protected privacy interest remains in contraband in a container once government officers lawfully have opened that container and identified its contents as illegal."). Adopting the reasoning of the District of Columbia Circuit, the Court finds that counsel's decision not to object to the lawful placement of the tracking device falls within the wide range of reasonable assistance, and was therefore not deficient representation.

The second concern raised in the § 2255 Motion regarding the execution of the search warrant for the Annette Court Apartment relates to ICE's procedure of executing the warrant after the tracking device sends an alert that the package was tampered with or opened. Pet'r's Mot. Vacate Mem. at 16, ECF No. 133. ICE Special Agent Slayton testifies that he received an alert that the package had been tampered with shortly after Petitioner entered the Annette Court Apartment. Supp. Hr. Tr. at 10-11, ECF No. 145-1. Petitioner denies any tampering, but does not provide evidence that the GPS was not tampered with or opened. In the absence of evidence to the contrary, his attorneys' decision to refrain from objecting to the execution of the search warrant based on an alert from a lawfully used tracking device was reasonable.

Additionally, Petitioner asserts that the search warrant lacked particularity because the requirement that the tracking device alert be received before execution was not made explicit in the

warrant. Specifically, Petitioner believes that the Magistrate Judge's statement in the warrant that it be executed "contingent upon the successful delivery of the package as described in the affidavit" is not synonymous with Agent Slayton's testimony that the execution was to occur upon tampering. The Fourth Amendment requires that warrants "particularly describ[e] the place to be searched, and the persons or things to be seized," and:

> The particularity requirement of the Fourth Amendment may be satisfied by cross-reference in the warrant to separate documents that identify the property in sufficient detail. As a general rule, a supporting affidavit or document may be read together with (and considered part of) a warrant that otherwise lacks sufficient particularity "if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant."

U.S. CONST. AMEND. IV; *United States v. Hurwitz*, 459 F.3d 463, 470-71 (4th Cir. 2006). Here, the Court finds that the search warrant provides adequate particularity to justify a reasonable attorney from objecting to its sufficiency. Attorney Babineau questioned Agent Slayton about the language of the search warrant to probe into issues of particularity. Supp. Hr. Tr. at 54. Moreover, any insufficiency in the warrant, to the extent it may exist, may be able to have been cured by cross-reference to the affidavit referred to by the Magistrate Judge to supply the requisite particularity on what "successful delivery of the package" means. Given the circumstances, Petitioner has not demonstrated that his attorneys' decision not to challenge the particularity of the warrant constitutes ineffective assistance.

For all of these reasons, the Court does not recognize any ineffectiveness related to the search warrant executed for the Annette Court Apartment. Petitioner has not demonstrated that his attorneys' failure to challenge standing, execution and particularity of the search warrant was deficient within the meaning of *Strickland*. Not only has Petitioner failed to provide evidence of any deficient performance, Petitioner has not shown he was prejudiced because he provides no

argument regarding a reasonable probability that but for counsels' improper challenging of the Annette Court Apartment search warrant, the result of the proceeding would have been different.

### ii. Lack of Probable Cause for Arrest

Petitioner contends that ICE agents did not have probable cause to arrest him because he was a United States citizen and because his connection to the package containing cocaine was not properly established. Generally, the Fourth Amendment requires that an arrest or search be based upon probable cause and executed pursuant to a valid warrant. *Katz v. United States*, 389 U.S. 347 (1967). An affidavit is properly based on probable cause when "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). Attorney Babineau argued in his motion to suppress that Petitioner's warrantless arrest following the lawful search of the Annette Court Apartment violated his rights under the Fourth Amendment because the facts available to the arresting officers at the time of the search did not establish probable cause for arrest. *See* Mot. Suppress Mem. 3-4. However, Petitioner claims that Attorney Babineau should have presented specific objections to any use of his immigration status, the uncorroborated utility bill document or Tara Upshaw's statements in establishing probable cause.

First, Petitioner believes his counsel should have argued that ICE agents did not present a conceivable immigration violation to constitute probable cause for his arrest. Petitioner contends that he was "subjected to 'administrative process or immigration violations'" but has not established that objectively reasonable counsel would have argued that the administrative arrest for deportation was influenced by a goal to amass evidence pertaining to drug offenses. Pet'r's Mot. Vacate Mem. at 20; *cf. Abel v. United States*, 362 U.S. 217, 230 (1959) ("The test [of

8

admissibility of evidence discovered in a search conducted as an incident to an administrative arrest of an alien] is whether the decision to proceed administratively toward deportation was influenced by, and was carried out for, a purpose of amassing evidence in the prosecution for crime."). Petitioner admits that ICE Special Agent Lewis transported him to jail on drug-related charges, not an immigration violation. Pet'r's Mot. Vacate Mem. at 21, 26. Petitioner has not rebutted the Government's assertion that Petitioner's immigration status was never at issue for the probable cause determination and that probable cause existed regardless of his citizenship. Opp'n Mot. Vacate 11, ECF No. 145. Both the district court and the Fourth Circuit concluded that the arresting agent had probable cause to believe that Petitioner was involved in importation of cocaine and possession of cocaine with intent to distribute as a result of his presence at the Annette Court Apartment, not because of his immigration status. Opp'n Mot. Vacate 11. Counsel was not ineffective for failing to object to any use of immigration status or violations to constitute probable cause, nor was Petitioner prejudiced because Attorney Babineau took advantage of the opportunity to challenge probable cause in his motion to suppress and has not demonstrated that counsel's deficient performance undermines confidence in this Court's findings and judgment.

Second, Petitioner believes counsel should have objected to probable cause on the basis that there was insufficient evidence connecting him to the package of cocaine. In particular, Petitioner points to an unsubstantiated document and inconsistent statements by Tara Upshaw to demonstrate that probable cause should have been challenged. Pet'r's Mot. Vacate Mem. at 37-40. While Petitioner is correct that the reliability of certain evidence was questionable, this Court determined that there were other reliable elements of probable cause. Specifically, Petitioner's presence at the Annette Court Apartment where the package was received and the results of the telephonic check revealing that Petitioner had recently reentered the United States

from the country of origin for the package gave rise to probable cause to arrest Petitioner for the narcotics violations. Petitioner has not shown that counsel's decision not to challenge probable cause based on Tara Upshaw's statements and the unsubstantiated document was deficient, or that in light of other indications of probable cause, the result of the proceeding would have been different if such a challenge was pursued.

### iii. *Miranda* Violation

In the initial motion to suppress, Attorney Babineau asserted a *Miranda* violation to support suppression of statements made by Petitioner after his arrest. *See* ECF No. 40. When counsel filed an amended motion to suppress after the Superseding Indictment was entered, he did not reassert the *Miranda* argument. *See* ECF No. 53. Petitioner contends that subsequent to his arrest, he was interrogated and pushed to the floor by ICE agents, all before being mirandized. Pet'r's Mot. Vacate Mem. at 56. However, counsel did not pursue suppression of incriminating statements Petitioner claims he was forced to make, which Petitioner believes was ineffective assistance.

The Fifth Amendment guarantees that "no person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. AMEND. V. The Supreme Court has held "that the coercion inherent in custodial interrogation blurs the line between voluntary and involuntary statements, and thus heightens the risk that an individual will not be 'accorded his privilege under the Fifth Amendment . . . not to be compelled to incriminate himself.'" *Dickerson v. United States*, 530 U.S. 42, 435 (2000) (quoting *Miranda v. Arizona*, 384 U.S. 436, 439 (1966).). Accordingly, the Supreme Court has adopted "concrete constitutional guidelines for law enforcement agencies and courts to follow," and officials must provide a suspect with warnings:

He must be warned prior to any questioning that he has the right to remain silent,

> that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Miranda*, 384 U.S. at 442, 479. When the government fails to issue *Miranda* warnings prior to questioning, statements made by the suspect thereafter "may not be used as evidence in the prosecution's case in chief." *Dickerson*, 530 U.S. at 444. If a court finds that under the totality of the circumstances there was "both an uncoerced choice and the requisite level of comprehension," a defendant's waiver of *Miranda* rights will be considered voluntary, knowing and intelligent. *United States v. Cristobal*, 293 F.3d 134, 140 (4th Cir. 2002). A waiver is involuntary "when induced by such duress or coercion, express or implied, that the accused's 'will has been overborne and his capacity for self-determination critically impaired.'" *United States v. Wertz*, 625 F.2d 1128, 1134 (4th Cir. 1980).

Attorney Babineau made a strategic choice not to reassert the *Miranda* claim, and the Court affords his strategy enormous deference, particularly in light of the fact that the evidence presented at the suppression hearing does not make clear that under a totality of the circumstances, a *Miranda* violation actually occurred. The agents involved in Petitioner's arrest and questioning denied touching Petitioner in an offensive manner or coercing certain admissions. Supp. Hr. Tr. at 68, 89. The agents also testified that Petitioner was advised of his *Miranda* rights after the execution of the search warrant but prior to questioning. *Id.* at 94. The only questions the agents admitted to asking before *Miranda* rights were explained pertained to Petitioner's immigration status, and such basic questions do not rise to the level of an "interrogation" and are not subject to *Miranda*'s requirements. *See Miranda*, 384 U.S. at 478; *see also Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S. Ct. 1682, 1690, 64 L. Ed. 2d 297 (1980) ("A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to

11

interrogation."). Petitioner presents no evidence beyond his own allegations that he was coerced into making statements, and has failed to overcome the presumption that counsels' decision not to pursue a *Miranda* claim fell within the wide range of objective reasonableness.

### iv. Failure to Call Certain Witnesses

In terms of Petitioner's contention that his attorneys failed to present certain witnesses at the probable cause and suppression hearings, "[c]ounsel has a constitutional duty to make reasonable investigations or to make reasonable decisions that make particular investigation unnecessary." *Strickland*, 466 U.S. at 691. If defense counsel made an adequate investigation into the facts and potential lines of defenses, "the strategic choices made as a result will seldom if ever be found wanting." *Id.* at 681. Petitioner has not shown that the strategic choice not to call Petitioner's mother as a witness at pre-trial hearings was deficient in view of the fact that the mother's testimony pertained to Petitioner's immigration status, which the Court has already found was not a material issue for the probable cause determination. Likewise, Petitioner has not shown that counsels' decision not to call Tara Upshaw and Tashan Upshaw to testify about agents' coercive actions and questioning was deficient, especially since both persons served as witnesses for the Government. Pet'r's Mot. Vacate Mem. at 61. Even assuming these failures amount to deficient performance, Petitioner does not attempt to show how he was prejudiced by them.

### B. Ineffective Assistance of Counsel – Trial Claims

Petitioner argues that Attorney Babineau was ineffective during his trial for four reasons: 1) failing to object to the use of prior out-of-court statements obtained by ICE agents in violation of *Miranda*; 2) refusing to call witnesses who possessed exculpatory evidence regarding the escape charge; 3) refusing to call his mother as an impeachment witness; and 4) falling asleep at trial. Petitioner also argues that Attorney Babineau was ineffective for neglecting to move to

strike the unprosecuted firearm charge from the Superseding Indictment.

### i. Reassertion of *Miranda* Violation and Failure to Call Witnesses Claims

It is well-established that in a criminal trial, defense counsel has the authority to manage most aspects of the defense without first obtaining the consent of the defendant. *See Florida v. Nixon*, 543 U.S. 175, 187 (2004). "Decisions that may be made without the defendant's consent primarily involve trial strategy and tactics, such as what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed." *Sexton v. French*, 163 F.3d 874, 885 (4th Cir. 1998) (internal quotation marks omitted). There is a presumption that counsel's strategic choices made as a result adequate investigation into the facts fall within the range of the objective standard of reasonableness. *See Strickland*, 466 U.S. at 681.

In regards to Petitioner's first three objections to Attorney Babineau's performance at trial, the Court previously discussed in the context of Petitioner's pre-trial claims that counsel's strategic decisions to challenge evidence and call witnesses do not constitute deficient representation in this case. A similar analysis applies to Petitioner's ineffective assistance of trial counsel claims. First, as the Court did not find the discontinued objection to out-of-court statements deficient during the pre-trial phase, the Court again does not find counsel's choice not to challenge those statements under *Miranda* during trial to be deficient because of the absence of persuasive evidence of coercion. Second, counsel's failure to call Petitioner's mother as an impeachment witness at trial was not deficient because her testimony concerned Petitioner's immigration status, which was not at issue during trial. Moreover, trial counsel did not believe Petitioner's mother could provide evidence to contradict the Government. *See* Aff. Att'y Babineau, Government Ex. 3, ECF No. 145-1, p. 21. Third, trial counsel's refusal to call

witnesses of the event leading to the escape charge has not been shown to have been deficient. Petitioner has not adequately shown that these witnesses, who were detainees being transported to Portsmouth City Jail along with Petitioner, would have provided any exculpatory evidence if called to testify. In fact, Attorney Babineau said that "[n]o such exculpatory evidence existed, as alleged by the defendant." *Id.* In sum, Petitioner has not demonstrated that trial counsel made errors in challenging evidence and calling witnesses so serious that his representation fell below the objective standard of reasonableness.

### ii. Claims of Sleeping Counsel

Petitioner contends that counsel fell asleep during trial. Petitioner points to one specific instance when his attorney did not respond immediately to the Court's question about objections to the admission of certain drug paraphernalia evidence. As it relates to a sleeping attorney, courts have found that "[u]nconscious counsel equates to no counsel at all. Unconscious counsel does not analyze, object, listen or in any way exercise judgment on behalf of a client." *Burdine v. Johnson*, 262 F.3d 336, 349 (5th Cir. 2001) (en banc); *see also Javor v. United States*, 724 F.2d 831, 832-33 (9th Cir. 1984) (holding that it was inherently prejudicial to the defendant for his attorney to sleep through a substantial portion of the trial); *United States v. Petersen*, 777 F.2d 482, 484 (9th Cir. 1985) (rejecting ineffective assistance claim because trial counsel's sworn testimony as well as the district court's own observations supported a finding that counsel had not slept).

Petitioner has not offered any evidence that Attorney Babineau fell asleep other than his own allegation about a single delayed response to the Court's question. Petitioner's allegation has not been supported by the Government or trial counsel. Attorney Babineau maintains in his sworn affidavit, "I was actively engaged at all times during my representation of the defendant and zealously cross-examined and confronted all of the defendant's accusers." Aff. Att'y Babineau,

p. 21. Also, Petitioner has not shown that the alleged sleeping resulted in prejudice. Petitioner did not claim any repeated unconsciousness or sleeping during substantial portions of the critical guilt-innocence phase of trial. Petitioner only argues that if trial counsel were alert during a single incident, he would have objected to the drug paraphernalia being admitted into evidence. Pet'r's Mot. Vacate Mem. at 69-70. However, Petitioner never establishes any reasonable probability that the outcome of the trial would have been different but for trial counsel's alleged sleeping. The present record in this case does not suggest a great likelihood that trial counsel slept through a substantial portion of the trial and did not fully participated in the trial, and Petitioner has not shown that any alleged sleeping resulted in prejudice.

### iii. Failure to Strike Unprosecuted Charge from Superseding Indictment

Petitioner incorporated an additional argument for ineffectiveness of trial counsel within his claims against appellate counsel, which is that trial counsel was ineffective for failing to present a motion to strike the unprosecuted firearm charge from the Superseding Indictment. The firearm that formed the basis for Count 3 of the Superseding Indictment was suppressed as the fruit of an unconstitutional search. Consequently, the Government did not prosecute Petitioner on Count 3, the Felon in Possession of Firearm charge; yet the Government did not request that the Court dismiss Count 3 until sentencing. Petitioner argues that this charge should have been dismissed prior to trial pursuant to Federal Rule of Criminal Procedure 7(d). While counsel's failure to file appropriate motions may constitute ineffective assistance, Petitioner does not discuss how such a failure to move to strike the unprosecuted charge prejudiced his defense. *Kimmelman v. Morrison*, 477 U.S. 365, 91 L.Ed.2d 305, 106 S.Ct. 2574 (1986). Therefore, this ineffective assistance of counsel claim is unavailing.

### C. Ineffective Assistance of Counsel – Appeal Claim

Petitioner asserts that during the appeal stage of the case, Attorney Diamond was ineffective because he did not contest the denial of Attorney Babineau's motion for a mistrial and the failure to strike the unprosecuted charge from the Superseding Indictment. On the first day of trial during the preliminary jury instructions, the Court misstated that Petitioner was being charged with Felon in Possession of a Firearm. Immediately after Attorney Babineau brought the misstatement to the Court's attention, the Court reread only the correct three charges. Attorney Babineau moved for a mistrial based on the misstatement, which the Court denied. The Court concluded that the misstatement was remedied and did not result in any prejudice to Petitioner. Trial counsel did not make a motion pursuant to Rule 7(d) to strike the firearm charge from the Superseding Indictment.

Appellate counsel is entitled to a "presumption that he decided which issues were most likely to afford relief on appeal." *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) (en banc) (quoting *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1993)). "Counsel's failure to pursue a basis for appeal by reason of a mere miscalculation of the likelihood of success does not constitute constitutionally ineffective representation." *United States v. Mikalajunas*, 186 F.3d 490, 493 (4th Cir. 1999) (citing *Smith v. Murray*, 477 U.S. 527, 534-35 (1986)). A judge may adjourn the case without a decision on the merits and declare a mistrial when there is a serious procedural error or misconduct that would result in an unfair trial. *See, e.g. Williamson v. United States*, 512 U.S. 594, 610 (1994). The Fourth Circuit reviews a challenge to a denial of a motion for mistrial for abuse of discretion, and "[i]n order for the trial court's ruling to constitute such an abuse of discretion, the defendant must show prejudice." *United States v. Dorsey*, 45 F.3d 809, 817 (4th Cir. 1995).

16

In this case, neither the circumstances nor the applicable legal standards suggest that such a challenge to the Court's failure to grant a mistrial or strike had any chance of proving meritorious. The trial judge cured the misstatement by carefully instructing the jury that an error was made and reading the correct charges, all before any evidence was introduced. The inclusion of the unprosecuted charge occurred incidentally and was never referenced again by either the Court or the parties. Also, Petitioner has not demonstrated that the inclusion of extraneous information in the Superseding Indictment would have had any impact on the trial. It is "highly probable" that neither the misstatement of charges nor the presence of the unprosecuted charge in the indictment affected the proceedings, making it unlikely that the judgment would have been vacated on appeal. *United States v. Vogt*, 910 F.2d 1184, 1193 (4th Cir. 1990). Therefore, Petitioner has not shown that appellate counsel's failure to challenge the district court's actions on appeal was deficient to rebut the presumption that his attorney's conduct falls within the range of reasonable assistance.

## IV. CONCLUSION

The Court finds that it is clear from the pleadings, files, and record that Petitioner is not entitled to relief. No evidentiary hearing is required in that Petitioner's claims "clearly fail[] to demonstrate either deficiency of counsel's performance or prejudice to the defendant." *United States v. Dawson*, 857 F.2d 923, 928 (3d Cir. 1988). For the reasons set forth above, Petitioner's Motion to Vacate or Set Aside Judgment of Conviction and Sentence is **DENIED**.

Pursuant to Rule 11(a) of the Rules Governing Proceedings Under 28 U.S.C. § 2255, the court is also required to issue or deny a certificate of appealability, which may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the court denies a petitioner's habeas petition on its merits, the petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of

the constitutional claims debatable or wrong. *See Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000); *see also Miller–El v. Cockrell,* 537 U.S. 322, 336–38, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). Petitioner does not satisfy this standard; accordingly, the Court **DENIES** a certificate of appealability. Although Petitioner may not appeal the denial of his § 2255 Motion without a certificate of appealability, he may seek one from the Fourth Circuit.

The Court **DIRECTS** the Clerk to send Petitioner a copy of the instructions and form packet for "Filing Motion Under 28 U.S.C. § 2244 For Order Authorizing District Court to Consider Second or Successive Application for Relief Under 28 U.S.C. §§ 2254 or 2255." The Court **ADVISES** Petitioner that he may appeal this final order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, VA 23510. The Clerk must receive this written notice within sixty (60) days from this Order's date.

The Court **DIRECTS** the Clerk to mail a copy of this Order to Petitioner and to the United States Attorney.

**IT IS SO ORDERED.**

Norfolk, Virginia
May /6 , 2014

/s/
Raymond A. Jackson
United States District Judge